**TIGER et al. v. TWIN STATE OIL CO. et al.**
**No. 312.**

Circuit Court of Appeals, Tenth Circuit.
March 16, 1931.

Charles B. Rogers, of Tulsa, Okl. (E. C. McMichael, of Sapulpa, Okl., on the brief), for appellants.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl., for appellee the United States.

William J. Gregg, of Tulsa, Okl. (G. Earl Shaffer and R. E. Berger, both of Tulsa, Okl., on the brief), for other appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellants, plaintiffs below, are the children of a full-blood Creek Indian whose English name was John Tiger. Plaintiffs demand possession of certain land allotted by the Dawes Commission to one Do-saw-cher, a full-blood Creek, and for an accounting for rents and profits. The defendants in possession deny plaintiffs' claim; they assert that Do-saw-cher was the Indian name of John Tiger; that John Tiger had been allotted other land, enjoyed the use thereof for

years, and sold it and enjoyed the proceeds. That shortly after the allotment to Do-saw-cher was made the government discovered that it was a duplicate allotment, the same Indian having theretofore received his allotment under his English name; that upon discovery of the error, the United States canceled the duplicate allotment, and reallotted the land to Leslie King and Alice Colbert, other Creeks entitled to allotments, through whom defendants claim. The United States appeared in the case for itself and on behalf of the Secretary of the Interior and Leslie King and Alice Colbert, and set up in detail the facts concerning the duplication of allotments, and affirmatively prayed for a decree canceling the allotment to Do-saw-cher on account of the gross mistake of fact and law in the making thereof, and that the title of Leslie King and Alice Colbert be quieted in them and their assigns. Upon the issues so joined the case was tried.

While there is room for conjecture in the tribal records, the evidence leaves no doubt as to the facts. On September 9, 1899, Mrs. Emma Lynch, a white woman, was appointed guardian for one "Euchee Indian boy whose name is John Tiger, a minor, under the age of 14 years." The name this boy was known under, in the Euchee Tribe, was Do-saw-cher. Mrs. Lynch then made application for an allotment for John Tiger, her ward. On September 3, 1902, allotment deeds for the land selected by Mrs. Lynch were executed to John Tiger, which were approved by the Secretary of the Interior on December 22, 1902, and filed for record on December 30, 1902. This is not the land involved in this action. Later Joseph Bruner was appointed his guardian, and as such executed a departmental oil and gas lease for him on the land so deeded to him. Siller Kemohah married John Tiger on September 5, 1913; he was known to her as John Tiger Lynch, getting the "Lynch" from his guardian. The marriage license names him as John Tiger. His wife testified that her husband was known in the Euchee Tribe as Do-saw-cher. She and John Tiger are the parents of the plaintiffs. He enlisted in the United States Army as John Tiger, and during his service his wife made several applications for the payment to her of royalties from the land deeded to her husband, and in such applications described herself as "Siller Tiger, the wife of John Tiger." The royalties were paid to her. In 1919 John Tiger applied for a removal of his restrictions, which was granted. In the same year he sold the land to W. R. McKee, the deed being executed by John and Siller Tiger. In 1920 Siller Tiger procured a divorce from her husband John Tiger, and later married Kemohah. John Tiger died in 1924.

From this brief recital it incontrovertibly appears that the father of plaintiffs, using his English name of John Tiger, accepted an allotment made to him, enjoyed the use of it for years, sold it and used the proceeds. The object of this action is to procure another allotment under his Indian name of Do-saw-cher. Plaintiffs' claim is that the "John Tiger" appearing on the records of the Dawes Commission was intended to identify another Indian called "Johnny" or "John Peter," and that John Tiger accepted, used and sold an allotment intended for John Peter, and has never had his own allotment. The trial court found against this claim on the facts, and we agree. But it is immaterial; for it cannot be disputed that this land was intentionally allotted and deeded to the father of plaintiffs, and the name used by him is but incidental. We turn now to the history of the land involved in this action.

On the rolls of the Dawes Commission appeared the name "Do-saw-cher." No one applied for an allotment under this enrollment, and accordingly the Dawes Commission arbitrarily allotted to "Do-saw-cher" the land in litigation, and in 1903 patents to him were executed, approved and recorded. They were sent to the Principal Chief of the Creek Nation for delivery, but no one called for them. In 1904 the Dawes Commission discovered that John Tiger, who already had his allotment, was the same individual as Do-saw-cher, and that the Do-saw-cher allotment was therefore a duplicate. The Commission procured affidavits supporting the fact of duplication and transmitted them to the Secretary of the Interior with its recommendation that Do-saw-cher's name be stricken from the rolls and the deeds issued in his name be canceled. The Secretary directed that this be done, and accordingly the name Do-saw-cher was stricken from the rolls; the Principal Chief of the Tribe canceled his signature to the deeds, and they were returned to the Secretary of the Interior. The land was later allotted to Leslie King and Alice Colbert, under whom defendants claim. Leslie King and Alice Colbert, and their assigns, have been in possession since 1907 or 1908.

The trial court denied a motion to dismiss the answer and cross-petition of the United States, and the answers of the defendants; and upon final hearing dismissed the plain-

tiffs' bill and entered a decree upon the cross-petition of the United States, striking the name of Do-saw-cher from the rolls, canceling the deeds issued in his name, and quieting the titles of the defendants. The plaintiffs appeal.

There can be no question of the correctness of that part of the decree which dismissed plaintiffs' bill. There is not the slightest doubt that the father of plaintiffs was granted his full allotment, accepted it, enjoyed it and sold it. That neither he nor his children are entitled to two allotments is conceded. The assertion of a claim to a second allotment is a fraud on every other member of the Tribe. That courts of equity can never be used as an aid in the perpetration of a fraud has been so long settled that the rule has become axiomatic. The plaintiffs' father has had his full share of the tribal property. That he used the name of John Tiger for that purpose is but incidental, for allotments are made to individuals and not to names. The father of plaintiffs cannot use his English name of Tiger to get one full allotment and his Indian name of Do-saw-cher to get another.

There is another all-sufficient reason why plaintiffs cannot prevail. Section 23 of the Creek Agreement (31 Stat. 861, 867) provides:

"Any allottee accepting such deed shall be deemed to assent to the allotment and conveyance of all the lands of the tribe, as provided herein, and as a relinquishment of all his right, title, and interest in and to the same, except in the proceeds of lands reserved from allotment.

"The acceptance of deeds of minors and incompetents, by persons authorized to select their allotments for them, shall be deemed sufficient to bind such minors and incompetents to allotment and conveyance of all other lands of the tribe, as provided herein."

By accepting the allotment selected by Mrs. Lynch, the plaintiffs' father expressly relinquished all his right, title, and interest to the land here in controversy.

Plaintiffs argue that John Tiger and Do-saw-cher are two individuals; the evidence to the contrary is overwhelming; but if they are, there is no dispute that plaintiffs' father is the individual who accepted the allotment he later sold to McKee; if Do-saw-cher is another individual, he is a phantom that is no kin to plaintiffs, and they have no concern with his allotment or this lawsuit.

Plaintiffs claim that John Tiger on the rolls is in fact John Peter in the flesh; that John Tiger in the flesh is Do-saw-cher on the rolls; that plaintiffs' father accepted John Peter's allotment by mistake, lived on it for years and sold it by mistake. But the claim is not borne out by the record, and is contradicted by the fact that even now the plaintiffs in this action are suing in the state courts to recover the land sold to McKee, land which in this court they assert to belong to the heirs of John Peter. But this is enough. Turn as we will, we come back to the undisputed fact that plaintiffs' father was the boy for whom Emma Lynch selected the land deeded to John Tiger; that the Commission intended that boy to have that particular land; he then became the "John Tiger" on the rolls, as he remained John Tiger throughout his life. The father of plaintiffs has had his allotment; his children are not entitled to another.

This leaves for disposition the correctness of that part of the decree granting the affirmative relief prayed for by the United States against the plaintiffs, the heirs of the individual whose name was carried on the rolls as "John Tiger" and as "Do-saw-cher."

The plaintiffs challenge the right of the United States to pray for the relief granted, on the ground that the United States has no interest in the controversy. The point is not well taken. The United States was a party to the agreement with the Creek Nation which provided for an equitable distribution of the tribal lands among the members of the Tribe, and officers of the United States were charged with the administration of that agreement; the proper administration of that agreement is a part of a "great governmental project, having for its object the social and industrial advancement of the Indians." United States v. Allen (C. C. A. 8) 179 F. 13. Every member of the Tribe has an interest in preventing one member from getting more than his share of the tribal lands; the United States is charged with a responsibility to all the members of the Tribe, and has a right to come into its own courts in their interest. No pecuniary interest is necessary. Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; United States v. New Orleans Pac. Ry. Co., 248 U. S. 507, 39 S. Ct. 175, 63 L. Ed. 388, and cases therein cited. It is argued that the defendants may not interpose an equitable defense in an action at law. Equitable defenses may now be interposed in actions at law. Judicial Code § 274b (28 USCA § 398).

512

 Coming now to the merits. The defendants rely in part upon the action of the Secretary of the Interior in removing the name of Do-saw-cher from the rolls, and the cancellation of the deeds by the Principal Chief and their surrender. The plaintiffs urge that such acts were ineffectual. Whether, under the circumstances of this case and under the Creek Agreement, the Secretary lost jurisdiction prior to some act of the allottee indicating an acceptance of the allotment, is much mooted in the briefs, but need not be decided. For even if he had not lost jurisdiction, he may not act arbitrarily. Cornelius v. Kessel, 128 U. S. 456, 9 S. Ct. 122, 32 L. Ed. 482. The Secretary must give notice and an opportunity to be heard to those whose rights will be affected by the correction of the rolls or the cancellation of instruments. This he did not do. Brown v. Hitchcock, 173 U. S. 473, 19 S. Ct. 485, 43 L. Ed. 772; Garfield v. U. S. ex rel. Goldsby, 211 U. S. 249, 29 S. Ct. 62, 53 L. Ed. 168.

The point is, however, not now material. The heirs of Do-saw-cher are now in a court of competent jurisdiction. They have now had ample notice of the prayer of the government to cancel the deeds and eliminate the name from the rolls; they have had their opportunity to be heard. The simple question remains, Is there power in the court to strike Do-saw-cher's name from the roll and cancel the deeds to him?

We have no doubt of the existence of the power, and it is one that has been exercised. Porter v. United States (C. C. A. 8) 260 F. 1. It would be a strange anomaly indeed if no power existed anywhere to correct such a manifest error as is disclosed by this record. John Tiger cannot be awarded two allotments without a breach of the agreement between the Creek Nation and the United States. If he cannot have two allotments—and he cannot—and there is no power to cancel the deeds to him and reallot the lands, then the land must remain as tribal land, another result not contemplated by the agreement.

 It is argued that the act of the Dawes Commission in enrolling Do-saw-cher was the determination of a quasi-judicial body that he was entitled to an allotment. This is true. A determination of the Dawes Commission, when acting within its jurisdiction, is subject only "to such attacks as could successfully be made upon judgments of this character for fraud or mistake," and such attacks must be supported by "full and convincing proof." United States v. Wildcat, 244 U. S. 111, 37 S. Ct. 561, 564, 61 L. Ed.

1024; United States v. Atkins, 260 U. S. 220, 43 S. Ct. 78, 67 L. Ed. 224. Reliance is also placed upon United States v. Lena (C. C. A. 3) 261 F. 144, wherein it was held in substance that if a claim was made before the Dawes Commission that a duplication existed, and the Commission considered the matter and determined that no duplication in fact existed, that the determination of the Commission cannot be impeached. In the case at bar the Commission did not determine that no duplication existed; on the contrary, when its attention was called to the matter, it found that a duplication did exist, and the record leaves no doubt of the correctness of that finding.

This court is not only bound by the decisions in the Wildcat and Atkins Cases, but is in thorough accord with the principles there announced. If there is to be any stability to Indian titles, the determination of the Dawes Commission as to matters confided to its jurisdiction cannot be collaterally re-examined on the ground that the Commission made a mistake in its determination. But that is not this case. The Commission in this case determined that the father of the plaintiffs was a member of the Tribe and entitled to an allotment. The mistake was in making two records of the one determination. Within the strict confines of the Wildcat and Atkins Cases, there is ample power in the court to correct this manifest error.

 In the first place, the action of the Dawes Commission in making a second allotment to the same Indian is in violation of the agreement it was administering, is beyond its power, and is void. Courts of equity have power to set aside actions of administrative boards or of inferior courts which are in excess of their jurisdiction. United States v. Walker, 109 U. S. 258, 3 S. Ct. 277, 27 L. Ed. 927. Again, the Supreme Court of the United States in the Wildcat and Atkins Cases expressly held that determinations of the Dawes Commission were subject to attack for extrinsic fraud or mistake. It conclusively appears that John Tiger and Do-saw-cher were but two names for one individual. A determination that Do-saw-cher should remain on the rolls and be allotted land after he, under the name of Tiger, had already received his allotment, could only be brought about by fraud or gross mistake. If the Commission intended to give two allotments to one Creek, it was fraud. But of course it did not so intend. It is entirely clear that its actions were the result of a mistake; not an intrinsic mistake in the deci-

sion of disputed facts or law in a matter presented to and determined by it, as in the Wildcat and Atkins Cases, but a mere clerical oversight in carrying one Indian on the rolls under two names. In the Atkins Case an actual controversy was presented and determined as to the existence of Tommy Atkins; a mistake in that determination is intrinsic, and does not void the determination. But no controversy was presented or determined here as to the existence of Do-saw-cher. He did exist. He was entitled to enrollment and allotment. But he was already enrolled, and already had his allotment under another name. The duplicate enrollment and allotment was not an intrinsic mistake in a determination, but an extrinsic mistake in making two records of one determination. Horton v. Stegmyer (C. C. A. 8) 175 F. 756, 20 Ann. Cas. 1134; Luikart v. Farmers' Lumber Co. (C. C. A. 10) 38 F.(2d) 588. If such a mistake can not be corrected, then no power would exist to correct the error of a scrivener for the Commission who described a section, instead of a quarter-section, in an allotment deed. We cannot conclude that the government is so helpless. We therefore hold that the trial court properly corrected this manifest error, and entered a decree accordingly.

Affirmed.