## ROBERTS v. ANDERSON et al.
### No. 770.

Circuit Court of Appeals, Tenth Circuit.
July 29, 1933.

Rehearing Denied Sept. 1, 1933.

Joseph C. Stone, of Muskogee, Okl. (D. Haden Linebaugh, Francis Stewart, and Julian B. Fite, all of Muskogee, Okl., on the brief), for appellant.

Merrick A. Whipple, of Tulsa, Okl. (F. M. Goodwin, of Washington, D. C., and O. C.

Essman, of Tulsa, Okl., on the brief), for appellee Hanna Anderson.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl. (A. E. Williams, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

Section 1 of the Act of Congress of June 14, 1918 (40 Stat. 606, 25 USCA § 375) provides that:

"A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the State of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said State for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, That an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally."

Under the authority so conferred, the county court of Okmulgee county entered an order on August 18, 1930, determining that Jack Roberts and Hanna Anderson were the sole heirs of Lena Yahola Alexander, a full-blood Creek Indian.

On July 21, 1930, Hanna Anderson, a full-blood Creek, brought this suit against Roberts and others claiming adverse interests, to quiet her title to lands allotted to Lena Yahola Alexander in her lifetime. Notice was served on the United States as provided by the Act of April 12, 1926 (44 Stat. 240) in response to which the United States filed an intervening petition which espoused the cause of Hanna Anderson and prayed that her title be quieted as against the defendants. Roberts set up the determination of the county court as a conclusive adjudication of his status as an heir. The trial court specially found as a fact that Hanna Anderson had been denied a hearing before the county court, and concluded that the determination of that court, being lacking in due process, was not binding on appellees. Voluminous testimony was heard upon the fact of heirship, from which the trial court found that Roberts was not the son of Lena Yahola Alexander. The title of Hanna was quieted.

The trial court had jurisdiction of Hanna's suit because of diversity of citizenship, and of the intervening petition of the United States by reason of its guardianship over Indians such as Hanna. Tiger v. Twin State Oil Co. (C. C. A. 10) 48 F.(2d) 509, 511.

The finding of the trial court on the merits, that Roberts was not an illegitimate child of Lena but was the son of Mahala who reared him from infancy, is not challenged. The efforts of Roberts, aided at times by his own mother, to participate in this large estate by assertions of his own illegitimacy, is a sordid story that need not be perpetuated by recital here, save to say that the record convinces us, as it did the trial court, that Roberts has no interest in the property involved. The claim of appellant is that the lower court was precluded from ascertaining the facts of heirship because of the prior determination by the county court.

It is now entirely settled that the act empowering the county courts of Oklahoma to determine heirship does not prohibit other courts from ascertaining and deciding the facts as to heirship whenever necessary in litigation in such other courts. Judge Sanborn, speaking for the Eighth Circuit Court of Appeals in McDougal v. Black Panther Oil & Gas Co., 273 F. 113, 118, examined the question from the standpoint of the statutes, the decisions, and public policy, and so determined; that decision has been followed in a great mass of litigation over Indian titles. Judge Rainey, speaking for the Supreme Court of Oklahoma, in an opinion characterized by Judge Sanborn as "exhaustive, instructive, and convincing," came to the same conclusion in State v. Huser, 76 Okl. 130, 184 P. 113, 122, and State v. Wilcox, 75 Okl. 158, 182 P. 673, where a writ of prohibition directed to the Judge of a Superior Court who was about to determine heirship as an incident to a suit to quiet title, was denied. See, also, Homer v. Lester, 95 Okl. 284, 219 P. 392.

It is likewise settled, by the cited decisions, that a valid determination by the county court under the quoted statute is binding upon all other courts to which the same question may be subsequently submitted. If an appeal is pending from such determination, it nevertheless is conclusive until set aside. Even though a judgment is later reversed, it is an adjudication while it remains in force. Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter House & Live-Stock Landing Co., 120 U. S. 141, 7 S. Ct. 472, 30 L. Ed. 614; Deposit

Bank v. Frankfort, 191 U. S. 499, 510, 24 S. Ct. 154, 48 L. Ed. 276; Straus v. American Publishers' Ass'n (C. C. A. 2) 201 F. 306, 310; Parkhurst v. Berdell, 110 N. Y. 386, 18 N. E. 123, 6 Am. St. Rep. 384; Freeman on Judgments, § 328.

From these authorities it is clear that while the county court has jurisdiction to determine the fact of heirship of deceased citizen allottees of the Five Civilized Tribes, such jurisdiction is not exclusive but concurrent; and that where such fact of heirship is necessary for the determination of actions pending in another court, such court may determine such fact, and need not stay its hand until the county court has acted. The first valid adjudication of the fact by either court is conclusive upon the other within the principles of estoppel by judgment. If, therefore, at the time of the trial of this suit to quiet title, over which the lower court had jurisdiction and the county court did not, a valid determination by the county court that Roberts was an heir of Lena Yahola Alexander was introduced in evidence, the trial court was precluded from again determining that fact. If the county court erred, either during the trial or in its decision, the error must be corrected on appeal to the higher state courts. If, however, the determination of the county court was lacking in the essentials of due process, then the determination is a nullity and cannot be availed of to preclude an ascertainment of the facts in this litigation. Appellees assert that the determination of the county court is a nullity for several reasons; but one need be considered, that Hanna was denied a hearing before the county court.

Where the rights of a citizen depend upon the ascertainment of facts, due process of law requires that he be notified of the hearing and be afforded an opportunity to be heard. Webster defined the "law of the land" as "a law which hears before it condemns." In Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914, there was a proper notice and appearance, but a hearing was denied. The court held the judgment was not entitled to respect in any other tribunal; that when a hearing is denied, the notice is ineffectual for any purpose. In McVeigh v. United States, 11 Wall. 259, 267, 20 L. Ed. 80, it was said that "A different result would be a blot upon our jurisprudence and civilization." Other cases to the effect that a denial of a hearing invalidates judgments of courts and decisions of administrative bodies are: Brinkerhoff-Faris T. & S. Co. v. Hill, 281 U. S. 673, 50 S. Ct.

451, 74 L. Ed. 1107; Goldsmith v. U. S. Board of Tax Appeals, 270 U. S. 117, 123, 46 S. Ct. 215, 70 L. Ed. 494; Moore v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543. In Atchison, Etc., Ry. Co. v. United States, 284 U. S. 248, 52 S. Ct. 146, 150, 76 L. Ed. 273, it was held that "a fair hearing is a fundamental requirement" of decisions of the Interstate Commerce Commission. In Int. Com. Comm. v. Louis. & Nash. R. R., 227 U. S. 88, 91, 33 S. Ct. 185, 186, 57 L. Ed. 431, it was held that "administrative orders, quasi judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair."

The right to a hearing includes the right to the assistance of counsel of his own choice, if requested. Cooke v. United States, 267 U. S. 517, 537, 45 S. Ct. 390, 69 L. Ed. 767; Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 64, 77 L. Ed. 158, 84 A. L. R. 527. In the case last cited, the Supreme Court said:

"If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

With these fundamental principles, which are embedded in this and every other government of free institutions, in mind, let us examine the proceedings before the county court which culminated in the determination here relied upon by appellant.

Hanna Anderson, conceded to be a daughter of Lena, was of age and of sound mind. She employed M. A. Whipple, a lawyer in good standing at the bar, to represent her in the heirship proceedings, and in writing authorized him to make such special or general appearance for her as the legal situation required. At the outset Whipple undertook to appear specially, as he had a right to do; in the early stages of the proceedings he appeared generally, first informally and then formally. The court denied him the right to appear generally, holding that he had "sinned away that right" by undertaking to appear specially and to remove the cause to the federal court. The court declined to permit Whipple to file an answer; it declined to permit the Hon. F. M. Goodwin, employed by authority of the Secretary of the Interior, to appear as associate counsel for Hanna. From this synoptical recital, it appears that Hanna

was denied her constitutional right to be heard through counsel of her choice.

But the county court was not content with denying her the right to appear by her own counsel; it appointed counsel not of her choosing to represent her in several capacities. The same court had appointed a guardian for her prior to the heirship proceedings; that appointment had been rightfully superseded when these proceedings commenced. Swain v. Swan, 147 Okl. 33, 294 P. 153. Although it is immaterial, in view of the fact that the order was superseded when the heirship proceedings were had, it may be noted that it has since been determined that the guardianship proceedings were void ab initio for lack of jurisdiction. In re Gardianship of Hanna Anderson, 161 Okl. 224, 18 P.(2d) 1073. Notwithstanding, the county court in the heirship proceedings recognized Mr. Horner, attorney for such guardian, Roodhouse. Later, it appointed Roodhouse as guardian ad litem for Hanna Anderson, with Horner as his attorney; still later, it concluded that it was without authority to appoint a guardian ad litem, and then appointed Horner as her attorney under a statute (St. Okl. 1931, § 1081) which provided for appointment of an attorney for nonresidents and others who "are unrepresented." It cannot seriously be claimed that Hanna was "unrepresented" when she had employed an attorney and clothed him with broad authority, who was present at every session clamoring for recognition. She was "represented" even if counsel representing her deemed it advisable to appear specially or to withdraw an appearance entered. All of these appointments were nullities; Horner never had a lawful right to speak for Hanna; yet he was the only counsel for her to whom the court accorded full recognition.

Appellant claims that, notwithstanding these facts, Hanna's rights were substantially preserved throughout the hearing. The record discloses that Whipple was permitted to appear for the administrators, who had no interest in the event of the hearing; that in such capacity, Whipple participated in the trial. It also appears that the court permitted Whipple to associate himself with Horner in representing Hanna, if it was agreeable to Horner; that Whipple as well as Horner participated in the examination of all the witnesses. It is further urged that it worked no prejudice to Hanna to strike her answer from the files, since none was necessary and since Horner's answer was as good as Whipple's.

The right to be represented by counsel is a substantial one, and means what it says. It does not mean that chosen counsel shall appear by permission of, or in subordination to, counsel appointed without warrant of law. The record in this case clearly discloses the confusion of tongues bound to arise when counsel of a person's choice is compelled to associate with counsel not so chosen. Appellant repeatedly states, in the brief, that Whipple dominated the hearings, and that Horner's appearance was formal and harmless. The record is quite to the contrary. In the controversies that arose at the trial, and they were many, Horner supported counsel for Roberts and opposed Whipple. One reading the record who was not familiar with the alignment, would be entirely sure that Horner was an associate of Linebaugh, counsel for Roberts, instead of Whipple. Almost without exception, Horner but echoed counsel for Roberts. To cite a few examples from the record: Linebaugh moved to strike Whipple's petition to remove from the files; Horner seconded the motion. Whipple objected to the service upon Roodhouse; Horner waived the objection. Linebaugh objected to Whipple's appearing for the administrators; Horner joined in the objection; Linebaugh withdrew his objection; Horner withdrew his. Whipple asked to file an answer signed by Hanna in propria persona and by Whipple her attorney. Horner objected and moved to strike it from the files. Horner asked for fees from Hanna's estate; Whipple objected. Whipple asked that the Hon. F. M. Goodwin be recognized as an associate attorney for Hanna; Horner objected, and stated to the court that he had heard that Hanna had given birth to an illegitimate child—a strange and uncalled for remark which throws a strong light on the contention that Horner substantially and in good faith represented Hanna. Upon the coming down of the decision, Whipple and Hanna wanted to appeal to the Superior Court, Horner to the District Court. The trial court granted Horner's petition and denied Whipple's. In every one of these controversies, Horner prevailed. The court struck Whipple's petition to remove from the files at Horner's request; it struck Whipple's answer on Horner's motion; it denied Goodwin the right to appear on Horner's objection; it granted Horner's appeal and denied Whipple's. The record is conclusive that, aside from the confusion attendant upon the enforced liaison, Horner and not Whipple was in the saddle throughout. The record does

not contain the testimony of the witnesses before the county court, but there is nothing to indicate that Horner relinquished his control to Whipple, nor changed his obstructive tactics, during that part of the proceedings.

Appellant then makes the point that even if Hanna was not permitted to be heard through Whipple and Goodwin, that she was heard through one Deichman, United States Probate Attorney. This is not true. The record of the county court hearings discloses a formal appearance by Deichman at the outset of the proceedings, the correctness of which Deichman disputes; such appearance if made was not however for Hanna, but for the government; it discloses no participation in the trial by him, and upon the trial of this case, he testified he was present as a spectator only on one or two occasions, and that he had no authority to appear for Hanna and did not. Moreover section 6 of the Act of May 27, 1908 (35 Stat. 312, 313), authorizes such attorney to appear for adults only "at the request of any allottee." No such request was made. Cf. Logan v. United States (C. C. A. 10) 58 F.(2d) 697, certiorari denied, 287 U. S. 630, 53 S. Ct. 82, 77 L. Ed. ——. Nor is it an answer to suggest that Hanna would have lost even if she had been granted a hearing; nor is it enough that one "may as a matter of favor have a hearing." Coe v. Armour Fertilizer Works, 237 U. S. 413, 424, 35 S. Ct. 625, 629, 59 L. Ed. 1027; Rees v. Watertown, 19 Wall. 107, 123, 22 L. Ed. 72; Stuart v. Palmer, 74 N. Y. 183, 188, 30 Am. Rep. 289.

We have then this situation: The county court denied Hanna the right to be heard through one counsel of her selection without reservation; it permitted her to be heard through other counsel of her selection only by permission of and in subordination to counsel whom she did not select and who constantly opposed her own counsel. There was forced upon her, without legal right, counsel appointed by the court. Such a hearing does not accord with those fundamental notions of substantial justice which due process demands. The hearing was more abortive than that condemned in Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; there the confusion of tongues arose from a multitude of counsel; here it was more acute, for associate counsel were at swords points throughout the hearing. In each case, representation by chosen counsel was denied. The facts in this case fall well within the facts in this latest expression of the Supreme Court

on the subject, and the reasoning of that opinion blankets the case at bar.

Appellant then urges that even if the determination of the county court was lacking in due process, the trial court should have accorded it the full faith and credit to which a valid judgment is entitled, since on appeal to the state courts, a valid judgment might have been thereafter rendered. We are cited to the familiar cases that actions of administrative tribunals may not be enjoined until administrative appeals are exhausted, Lane v. United States, 241 U. S. 202, 36 S. Ct. 599, 60 L. Ed. 956, Brown v. Hitchcock, 173 U. S. 473, 19 S. Ct. 485, 43 L. Ed. 772, Litchfield v. Richards, 76 U. S. (9 Wall.) 575, 19 L. Ed. 681, and to the cases which hold that the action of the Dawes Commission is not subject to collateral attack, United States v. Wildcat, 244 U. S. 111, 37 S. Ct. 561, 61 L. Ed. 1024; United States v. Atkins, 260 U. S. 220, 43 S. Ct. 78, 67 L. Ed. 224; Tiger v. Twin State Oil Co. (C. C. A. 10) 48 F.(2d) 509. But in these cases it was held that such determinations were subject to the same attacks as judgments, and that the administrative officers must give notice and an opportunity to be heard to those whose rights are affected. The doctrine of these cases, if they were applicable, simply brings us back to where we started. We are then cited to the general rule that in determining whether due process is afforded by state laws, the inquiry should include appellate procedure designed to correct errors. Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969; Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135; Minnesota v. Brundage, 180 U. S. 499, 21 S. Ct. 455, 45 L. Ed. 639; Ex parte Meeks (D. C. Ky.) 20 F.(2d) 543. If the jurisdiction of the county court were exclusive, and if this action were merely one to set aside the determination of that court, we would be confronted with a situation comparable at least to those presented in the cited cases, in each of which a judgment or determination was attacked in a court which did not have original jurisdiction in the premises.

But we think none of these cases applicable. As we view this case, it is not complicated by any question of pending appeals, or an unexercised right of appeal. It must be conceded that the lower court had jurisdiction, concurrent with that of the county court, to determine the fact of heirship. It must be conceded too, under the Black Panther and Wilcox Cases, that the lower court might proceed if no trial had been held in the county court; the fact that one might be held later

could not deter the lower court. The question then is a simple one: The trial court, exercising unquestioned jurisdiction of a suit to quiet title, was confronted with the fact of heirship. Its duty was to decide it. A determination of the county court was presented as conclusive. The lower court found, upon ample evidence, that the determination was of no effect, because due process was denied. It could not recognize it as conclusive under the Constitution. What should the trial court do? It must either continue the cause until, in good time or never, the state courts acted; or it must proceed to adjudicate the issues presented to it by the suit to quiet title. We are of the opinion that the trial court followed the proper course; no valid determination of heirship being in existence when the cause was tried, it was its duty to decide the issues properly before it.

The government presents another interesting argument in support of the decree below. It argues that since no notice was given to the Superintendent of the Five Civilized Tribes as provided by the Act of April 12, 1926 (44 Stat. 240), the government is not bound by the determination of the county court; that even if that determination was binding as to Hanna Anderson, it does not bind the government, nor affect the decree below in so far as it was responsive to the intervening petition of the government. We are cited to United States v. Candelaria, 271 U. S. 432, 46 S. Ct. 561, 563, 70 L. Ed. 1023, and its holding that a decree which operates "directly or indirectly to transfer the lands from the Indians" is not binding on the government unless it is a party. It is argued, with much earnestness, that a conclusive determination of heirship by the county court indirectly operates upon the title to Indian lands; that if such a determination binds the United States when it is not notified of the proceeding, the way is open to circumvent restrictions and the policy of the law announced in the Candelaria Case. The act does not clearly refer to heirship proceedings in the probate court; nor are probate proceedings ordinarily removable; an heirship proceeding may indirectly affect the title to lands, or it may not. The point is not necessary to a disposition of the cause, and Congress may clear up any uncertainty that exists before it again arises. We therefore leave it as we find it.

We conclude that the trial court did not err in determining the facts necessary to enter its decree; and that its decree is in accord with the record and the law. It is, therefore, in all respects affirmed.