## COHEN v. SUPERIOR OIL CORPORATION.

### No. 1.

District Court, D. Delaware.
Sept. 1, 1936.

Albert L. Simon, of Wilmington, Del., and Meyer Kraushaar (of Kraushaar & Klapper), of New York City, for plaintiff.

Ward & Gray and David F. Anderson, all of Wilmington, Del., for defendant.

NIELDS, District Judge.

Demurrers to replications filed to three special pleas to the first count of the declaration.

Assumpsit was brought by William W. Cohen against Superior Oil Corporation. Plaintiff's declaration contains six counts of which 2, 3, 4, 5, and 6 are the common counts. The first count alleges that the plaintiff is the holder of three promissory notes made by defendant on April 30, 1930, payable in New York to Naphen & Co., Inc. The first count further alleges that Naphen & Co., Inc., the payee, indorsed said notes to the plaintiff for a valuable consideration and before the maturity thereof, and that defendant has failed and refused to pay the amounts due on said notes to the plaintiff and still refuses so to do.

Defendant filed three special pleas, 6, 7, and 8, to the first count of the declaration.

(1) The sixth plea is res judicata. It alleges that on July 30, 1930, a receiver was appointed for defendant in proceedings instituted in the state court of Oklahoma; that the receiver took charge of the assets of defendant in Oklahoma and notified creditors to file their claims; that pursuant to said notice the plaintiff, William W. Cohen, filed his claim with the receiver on November 24, 1930; that said claim was for $150,000 based upon the identical notes here in suit. Exceptions were taken to the claim filed by Cohen with the receiver on the ground that the notes forming the basis of the claim were without consideration and were procured by the fraud of the payee of said notes and that Cohen knew these facts. The receivers' exceptions to Cohen's claim were sustained by the Oklahoma court. That court held Cohen was not entitled to recover anything on the notes. Wherefore, defendant alleges that the adjudication of Cohen's rights in the Oklahoma court is a bar to plaintiff's action. Plaintiff's replication to defendant's sixth plea alleges that an appeal was taken by the plaintiff (Cohen) from the judgment of the Oklahoma court disallowing his claim in the receivership proceeding. It further alleges that while this appeal was pending a plan of reorganization was adopted and the assets in the hands of the receiver were returned to Superior Oil Corporation, and that the receiver was discharged. In the plan of reorganization approved by the Oklahoma court it was provided that the Superior Oil Corporation should agree to perform all contracts and obligations of the receiver. In its order confirming said plan of reorganization the Oklahoma court expressly reserved the power to retake the property and assets of Superior Oil Corporation if it failed to fulfill the obligations of the receiver. Plaintiff's replication further alleges: (1) That by reason of the receiver's discharge, judgment of the Oklahoma court disallowing Cohen's (plaintiff's) claim is null and void, and of no effect ab initio; (2) that if said judgment of the Oklahoma court were still in force, the pendency of an appeal therefrom prevents said judgment from being res judicata; (3) that the suit in Oklahoma is not between the same parties involving the same subject-matter. To this replication of the plaintiff to defendant's sixth plea defendant has demurred.

(2) Defendant's seventh plea to the first count of plaintiff's declaration alleges that the three promissory notes mentioned in

said count were obtained by the payee thereof without any good or valuable consideration and came into the hands of the plaintiff after he knew or should have known of said lack of consideration. This plea alleges that the notes in suit were given to replace other notes of a like amount, originally made by Superior Oil Corporation to Naphen & Co., Inc., on October 30, 1929, and that no new consideration was given at the time said renewal notes were made. The plea further alleges that the purported consideration for the said original notes was certain Mexican Oil property, owned by Naphen & Co., Inc. That the consideration for the sale of said property was $1,500,000, of which the defendant paid $500,000 in cash and gave its notes for the balance. That George F. Naphen, the president of Naphen & Co., Inc., had a dominating influence over the directors of Superior Oil Corporation and induced them to believe that the fair value of said property was $1,500,000, whereas the actual value of said property was only $170,000. That at the time of the renewal of the notes Superior Oil Corporation was still acting under the influence and control of said George F. Naphen. The plea further alleges that the plaintiff knew or should have known of the circumstances surrounding the issuance of the original notes so that his action in taking the same amounted to bad faith. Plaintiff's replication to defendant's seventh plea alleges that "the voluntary renewal and extension by said defendant of said three notes in the amount of $50,000 each above mentioned, was a waiver and relinquishment of any defense of fraud, misrepresentation or failure of consideration and that the defendant knew or should have known of such defenses, if they existed, at the several times that the notes were renewed or extended and the failure of the said defendant to assert such defenses before said several renewals or extensions of said notes constitutes a waiver, relinquishment and estoppel of such defenses and of the defense that the plaintiff is not a holder in due course." Defendant has demurred to plaintiff's replication to defendant's seventh plea. The special grounds of demurrer are: That the replication is argumentative; that the replication as a traverse is not sufficient, since it was not made modo et forma; that the replication as a plea in the nature of confession and avoidance attempts to avoid without confessing the truth of the allega-tions of the plea; that the replication as a plea of estoppel is argumentative and no certain and sufficient issue can be taken thereon.

(3) Defendant's eighth plea to the first count of plaintiff's declaration alleges that the three promissory notes were procured by the fraud and misrepresentations of the payee of said notes; that plaintiff received said notes after he knew or should have known of the surrounding circumstances so that plaintiff's action in taking said notes amounted to bad faith. The facts set forth in said eighth plea in support of said allegations are substantially the same as those contained in defendant's seventh plea. Plaintiff's replication to defendant's eighth plea is substantially the same as his replication to defendant's seventh plea and alleges a waiver or relinquishment of the defense of fraud and misrepresentation by the making of renewal notes. Defendant has demurred to plaintiff's replication to defendant's eighth plea. The special grounds of demurrer are the same as those to plaintiff's replication to defendant's seventh plea.

(1) Plaintiff's replication to defendant's sixth plea to the first count of the declaration will be considered. This replication is defective because it contains three distinct, separate, and contradictory replies to the sixth plea. "The replication must not be double, or in other words, contain two answers to the same plea." Chitty on Pleading (5th Am.Ed.) vol. 1, p. 561. This replication contains three distinct answers to the plea. To defendant's plea of res judicata the plaintiff alleges: (1) That the prior judgment is null and void ab initio; (2) that an appeal is pending from said Oklahoma judgment which prevents it from being res judicata; (3) that the prior judgment is not between the same parties involving the same subject-matter. Thus, plaintiff has tendered issues on three distinct points, any one of which, if maintained, would sustain his replication. The replication is duplicitous.

"A replication should not be double, that is, it should not contain, as one ground of reply, two or more distinct allegations or denials, either one of which is a complete answer to the plea." 49 Corpus Juris, 352, § 434.

Aside from the formal defects, plaintiff's replication fails to answer defendant's plea of res judicata. In his repli-

cation plaintiff alleges that by reason of the discharge of the receiver, the courts of Oklahoma have lost jurisdiction of Cohen's (plaintiff's) claim, and therefore the judgment disallowing his claim is null and void and of no effect ab initio. This is a non sequitur. The order of the Oklahoma court providing for the surrender of the assets in the hands of the receiver and the order discharging the receiver do not purport to nullify the proceedings taken during the course of the receivership. On the contrary, according to the order as pleaded in the replication, the court expressly reserves to itself the power to see that all the obligations of the receiver are performed. The order provides: "It is also ordered, adjudged and decreed by the Court that as a condition for the surrender to it of the property in the hands of the Receiver, Superior Oil Corporation shall by its appropriate resolution of its Board of Directors accept the delivery and surrender of said property from said Receiver and agree that it will be bound by and perform all of the contracts and obligations of the Receiver for payments or otherwise; and the power to retake said property or any parcel thereof, in the event the said Superior Oil Corporation shall fail to comply with its said obligation, is hereby expressly reserved by the Court, and this Court expressly retains jurisdiction of all of said property and the power to retake said property or any part thereof and restore and reinstate the said Receivership for the purpose of enforcing the performance of any and all of the contracts and obligations of the said Receiver so to be assumed by Superior Oil Corporation at or before the receipt and taking by it of said property." Further, the replication alleges that Cohen is now engaged in prosecuting an appeal from said judgment in the Supreme Court of Oklahoma. No authority is cited and none can be found that the Oklahoma judgment is null and void by reason thereof. The only question is whether the pendency of an appeal prevents the Oklahoma judgment from being res judicata. There is no basis for this contention.

"The appeal from a judgment does not suspend its effect. The appeal when perfected, may stay execution upon the judgment from which it is taken; but, until reversed, it stands binding upon the parties on every question directly decided." Emery v. United States (D.C.) 27 F.(2d) 992, 994.

"When the state court refused to give that judgment effect it denied a right secured by the Federal court judgment upon matters wherein its decision was final until reversed in an appellate court, or modified or set aside in the court of its rendition." Deposit Bank of Frankfort v. Frankfort, 191 U.S. 499, 520, 24 S.Ct. 154, 162, 48 L.Ed. 276.

The United States Supreme Court recognized the principle that the judgment of a competent court is res judicata in all other controversies involving the same subject-matter between the same parties, until reversed or set aside. The pendency of an appeal does not prevent such a judgment from being res judicata. It is only when reversed on appeal that such a judgment loses its efficacy.

"The doctrine is of familiar application in this court that a prior adjudication of the same subject-matters, between the same parties, although in a different mode of proceeding, operates as an estoppel upon the parties against subsequent litigation, at least as to all matters that were actually in controversy and decided in that adjudication. Garrick v. Chamberlain, 97 Ill. 620; Hawley v. Simons, 102 Ill. 115; Hamilton v. Quimby, 46 Ill. [90], 98; Hanna v. Read, 102 Ill. 596 [40 Am.Rep. 608]. But it seems to be thought by counsel for appellants that the fact than an appeal has been prosecuted from the decree destroys it as a former adjudication. This is a misapprehension. The appeal does not vacate or set aside the decree. It simply suspends its execution, and leaves it in full force as a determination of the cause of action, and a bar to its further prosecution. Curtis v. Root, 28 Ill. 367; Oakes v. Williams, 107 Ill. 154; Nill v. Comparet, 16 Ind. 107 [79 Am.Dec. 411]; Burton v. Burton, 28 Ind. 342; Bank of North America v. Wheeler, 28 Conn. 433 [73 Am.Dec. 683]; Freem. Judgm. § 328." Moore v. Williams, 132 Ill. 589, 24 N.E. 619, 22 Am.St.Rep. 563.

The plaintiff submitted his cause of action to the Oklahoma courts and is bound by such election after judgment has been entered against him. He cannot come into this forum and retry the same issues a second time. The Oklahoma judgment in favor of the defendant is a bar to this proceeding, and the pendency of the appeal does not disturb its effectiveness.

In his replication to the sixth plea, plaintiff also contends that the Oklahoma

judgment is not between the same parties nor based upon the same subject-matter. The replication shows that the claim filed in the receivership proceedings in Oklahoma was based upon the same notes which form the basis of the present suit. The claim in Oklahoma was prosecuted against the receiver of Superior Oil Corporation. In this case the claim is prosecuted against Superior Oil Corporation itself. Does this fact prevent the Oklahoma judgment from operating as a res judicata against the plaintiff in this action? Waiving the question of privity between the receiver and the corporation itself, it has been decided in Delaware that a party may plead res judicata who was not a party to the prior suit if the same issue was decided in the prior suit. A plaintiff deliberately selecting his forum is bound by an adverse judgment involving identical issues even though the defendant in the second suit was not a party nor in privity with a party in the former proceeding.

"A very different situation arises in the case where res judicata is pleaded by one not a party to the first suit against one who was such party. This is our present case.

"It is quite apparent that a direct and decisive conflict now arises between the two principles; of requirement of mutuality of estoppel on the one hand, and, on the other, the basic principle of res judicata, viz., the limitation to a party to one full and free opportunity to try the merits of his case.

"The present defendant pleading res judicata was not a party to the former proceeding and the judgment in the former proceeding did not bind it so there is no mutuality. The present plaintiff, against whom the res judicata is pleaded is alleged to have been the unsuccessful plaintiff in the former proceedings where the issues were alleged to have been identical with those here involved. We are not now passing upon the actual existence, as a fact, of the identity of the issues in the two proceedings, for that identity must be proven. But assuming the identity of the issues, we are of the opinion that a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs, is bound by such adverse judgment in a second suit involving all the identical issues already decided. The requirement of mutuality must yield to public policy. To hold otherwise would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one." Coca-Cola Co. v. Pepsi-Cola Co. (Del.Super.) 172 A. 260, 263.

■ The force and effect of the doctrine of res judicata has been clearly stated in an essay by Chief Justice von Moschzisker:

"The rule of res judicata is said not to have been definitely formulated until 1776, but, in essence, it is of much earlier origin and application. Primarily, the rule is one of public policy, and, secondarily, of private benefit to individual litigants. The primary principle early found expression in the maxim 'Interest reipublicae ut sit finis litium,' and the secondary or subordinate one in the form 'Nemo debet bis vexari pro una et eadem causa.'

"Although the doctrine of res judicata is frequently invoked, yet difficulties continue to be encountered in its application, particularly where either court or counsel fails to realize that, of the two principles which it comprehends, the protection from the annoyance of repeated litigation, which the individual suitor is afforded, is, after all, only an incident of the first principle, that the best interests of society demand that litigation be concluded. * * *

"There is a certain resemblance between the doctrines of res judicata and stare decisis; both are rules of public policy intended to maintain stability in human relations by giving repose to litigation, and both operate to prevent the constant reconsideration of settled questions, but they operate in somewhat different fields and with different degrees of authority. Stare decisis deals exclusively with matters of law and principle, and may be applied to such matters only when the proved facts of a pending case coincide with, or approximate, those of a prior one; whereas res judicata, though fixing the law of the actual controversy, has to do particularly with the protection from attack of judicially established facts. Also, stare decisis, while of high authority, is not absolutely binding in subsequent cases, that is to say, the court may reconsider the question previously passed upon and modify or reverse its former pronouncements of law; but res judicata is not so yielding—it binds alike both courts and litigants. As a plea, a

former adjudication is a bar to subsequent suits for the same cause; as evidence, it is conclusive of the facts therein established.

"Speaking broadly, the rule of res judicata means that when a court of competent jurisdiction has determined, on its merits, a litigated cause, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject matter then before the court. * * *

"Finally, the rule of res judicata holds good not only in the court which rendered the judgment in question, but in other tribunals where the same facts or points of law may later be directly at issue. * * *

"The terms res judicata and estoppel are so closely linked in legal parlance that at times the two seem to be used almost interchangeably; yet it is essential to keep in mind the difference between the estoppel elements of res judicata and estoppel in pais. * * *

"Res judicata is a rule of public policy laid upon suitors to maintain general peace, promote certainty, and conserve the time of the courts; while estoppel in pais is of concern to the parties alone, and arises out of the voluntary acts of one of the parties to a controversy. This latter sort of estoppel originated in equity, and, as enforced by the courts, operates to prevent one who has induced others to rely on his acts from pursuing a remedy which denies them. Since estoppel in pais is entirely for the protection of those entitled to call for its enforcement, it is a personal right which may be lost either by failing to set it up properly, or by voluntary waiver; and, in contrast to res judicata, no principle of public policy is involved."

Privity exists between a corporation and its receiver. The receiver stands in the shoes of the corporation. The decree of the Oklahoma court appointing a receiver for the defendant corporation set out in plaintiff's replication recognizes that the receiver was merely acting for the corporation. It provides: "To take charge of the estate and effects thereof, to collect the outstanding debts, claims and property due and belonging to said corporation, with power to prosecute and defend in the name of the corporation, or otherwise, all claims or suits; * * *" The decree of the Oklahoma court returning the property to Superior Oil Corporation provides that it is subject to the receiver's obligations. There was privity between the corporation and the receiver so that a judgment in favor of the receiver is a bar to a later suit on the same cause of action against Superior Oil Corporation.

Plaintiff's counsel relies upon two cases to support his position that a pending appeal from a prior judgment suspends the operation of a plea of res judicata. These cases are City of Tulsa v. Wells, 79 Okl. 39, 191 P. 186; and Coppedge v. Clinton (C.C.A.10) 72 F.(2d) 531. The latter case was one in which the court considered the conclusiveness of an Oklahoma judgment from which an appeal was pending. The court reached the conclusion that under the Oklahoma law a judgment was not conclusive pending an appeal. In arriving at this result the federal court relied solely upon the case of City of Tulsa v. Wells. In so doing the federal court reversed the stand which it had previously taken in Roberts v. Anderson (C.C.A.) 66 F.(2d) 874.

In City of Tulsa v. Wells, Wells brought an action for personal injuries alleged to have been received on the streets of Tulsa by reason of defendant's negligence. As a bar to this action defendant alleged that plaintiff had sued the street railway company in the District Court of Oklahoma on the same cause of action and that a jury trial had resulted in a verdict for the street railway company. It appeared that an appeal was pending from the judgment in favor of the street railway company. The court held the plaintiff had concurrent remedies against both defendants as joint tort-feasors and could recover separate judgments against each, although plaintiff was entitled to only one satisfaction. Therefore, the court decided that a judgment in the case against one of the joint tort-feasors was not a bar to a suit against the other joint tort-feasor. The reason for the ruling in Tulsa v. Wells, is stated by Chief Justice von Moschzisker in the following words: "In an Oklahoma case [City of Tulsa v. Wells] the city and the street railway company

were regarded as joint tort feasors, a view rejected, however, by a number of jurisdictions, and the court refused to allow the force of res judicata to a prior judgment for one of these parties, on the ground that a finding in favor of one joint tort feasor cannot be set up as a defense by the other. This result naturally follows from holding the parties joint tort feasors, for the respective defendants would not be in privity. * * *" von Moschzisker Stare Decisis, Res Judicata, etc., p. 42.

The only decision that was made in Tulsa v. Wells was the statement of the familiar principle of law that a party is entitled to proceed against either one or both of two joint tort-feasors, and that a party may recover separate judgments against each of two joint tort-feasors. It is apparent, therefore, that in Coppedge v. Clinton, the Federal court was laboring under a misapprehension as to the true meaning of the case of City of Tulsa v. Wells.

(2) and (3) The seventh plea alleges that the promissory notes in question were substitute or renewal notes given in exchange for certain original notes; that the original notes were procured by the payee without consideration and came into the hands of the plaintiff after he knew or should have known of such lack of consideration. The plea further alleges that defendant relied upon the misrepresentations of the payee and was under the control of the payee at the time both the original and the renewal notes were given.

The eighth plea to the first count of the declaration is substantially the same as the seventh plea, except that the defense relied upon is fraud and misrepresentation. Plaintiff's replication to the eighth plea is substantially the same as his replication to the seventh plea. Replications to the seventh and eighth pleas will therefore be considered together.

Plaintiff's replications allege that the giving of renewal or substitute notes constitutes a waiver of the defenses of lack of consideration, fraud, and misrepresentation which might have been asserted against the original notes. To these replications defendant has demurred. The special grounds of demurrer are: (1) That said replications are argumentative and no certain and sufficient issue can be taken thereon. In the pleas defendant alleged it was under the same disability and labored under the same misrepresentations at the time the renewal notes were made that it was under at the time of making the original notes. Plaintiff's replication alleges that the defendant knew or should have known of such defenses at the time the renewal notes were made. These replications are clearly argumentative, since they do not deny the allegations of defendant's pleas, but inferentially traverse the same.

"Pleadings must not be argumentative. In other words, they must advance their positions of fact in an absolute form, and not leave them to be collected by inference and argument only." Stephen on Pleading (9th Am.Ed.) p. 383.

Defendant alleges that it had no knowledge of said defenses at the time the renewal notes were given, and plaintiff replies that defendant should have known of such defenses. It is impossible to reach an issue based on such a replication. In this respect plaintiff's replications to defendant's seventh and eighth pleas are defective.

The second special ground of demurrer to plaintiff's replication is that if said replications are intended to serve as a traverse they are not made modo et forma. The replications do not expressly deny the allegations of the pleas.

The third special ground of demurrer is that if plaintiff's replications are intended as pleas in confession and avoidance, said replications attempt to avoid without confessing the truth of the allegations in the pleas. If plaintiff's replications are intended as pleas of estoppel, they are argumentative, and no certain and sufficient issues can be taken thereon. In his replications plaintiff alleges that the giving of renewal notes by defendant constituted a waiver of the defenses of fraud, misrepresentation, and lack of consideration which may have been pleas to the original notes. In these replications plaintiff does not admit that defendant had such defenses to the original notes. On the contrary, plaintiff alleges "that the defendant knew or should have known of such defenses, at the several times that the notes were renewed or extended. * * *" Plaintiff thus attempts to avoid such defenses without admitting that they exist.

"With respect to the quality of these pleadings it is to be observed, that it is of

their essence (as the name itself imports) to confess 'the truth of the allegation which they propose to answer or avoid." Stephen on Pleading (9th Am.Ed.) p. 199.

Plaintiff's replications do not conform to the requirements of a plea in confession and avoidance or to a plea of estoppel and are defective.

Aside from the formal defects of plaintiff's replications to the seventh and eighth pleas, those replications are insufficient as a matter of substantive law. The making of renewal notes does not constitute a waiver of defendant's defenses to the original notes. Before one can waive a defense he must know of such defense. It is not contended that defendant had actual knowledge of the fraud, misrepresentation, and lack of consideration at the time the renewal notes were made.

"If a so-called waiver, which is merely promise unsupported by consideration or promissory estoppel, to give up a matured right or defense, is ever valid (save in a few exceptional cases like the Statute of Limitations) it can only be so where the promisor clearly manifests an intent to promise with full understanding of the facts. It is perhaps with this sort of case chiefly in mind that the statement is commonly made that knowledge of the facts is necessary to an effective waiver; and though no sharp boundaries can be drawn defining the requisites of laches or acquiescence, a court would be slow to refuse relief on this ground unless there was either actual knowledge of the facts or at least great negligence in the matter." Williston on Contracts (vol. II), § 697, p. 1348.

"But acts in affirmance of the contract amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception." 27 Corpus Juris 23, § 135.

The allegation of waiver in plaintiff's replications is unfounded because defendant had no actual knowledge of the fraud and misrepresentation at the time the renewal notes were given and could not have intended to waive such defense.

Defendant's demurrers to plaintiff's replications to defendant's sixth, seventh, and eighth pleas must be sustained.