SALLIE S. BROWN, Respondent, *v.* THE CLEVELAND TRUST COMPANY, Appellant.

**Trust — contract — trust agreement to secure payment to wife in lieu of alimony, maintenance and support — when no personal liability devolves upon trustee — duty and liability of trustee — former adjudication — interlocutory judgment is never res adjudicata — action which has been discontinued concludes no one.**

1. Where upon examination of the provisions of a trust agreement the only conclusion that can be drawn is that the trustee was to hold the property put into its possession for the purpose of securing payments, agreed to be made to a wife from such property, in lieu of alimony, maintenance and support, in case her husband neglected or failed to pay and when such property became exhausted then the liability of the trust company ceased and there is no word in the agreement which imposed a personal obligation upon the trust company to pay in case the husband failed to pay as therein provided, the trustee was bound, in the management of all the matters of the trust, to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs, and if it did not so act, then it became liable only to the extent of the depletion of the trust fund.

2. An interlocutory judgment is never *res adjudicata.* It is only a final judgment on the merits which prevents further contest upon the same issue, between the same parties, that becomes conclusive between them and their privies, which is *res adjudicata.* Until a final judgment has been entered, the proceedings are subject to change and modification and avail nothing as a bar. It was, therefore, error for the Appellate Division to hold that a judgment overruling

a demurrer to the complaint in a former action against the trust company to recover installments then due was *res adjudicata* as to the construction of the agreement ·in this action. This is especially so where the former action was discontinued by consent of the parties. The action having been discontinued there was no adjudication in that action which bound any one.

3. The Appellate Division not having passed upon the facts, and it having yet to determine whether the defendant was negligent, and if so whether the damages assessed against it because of its negligence are excessive or inadequate, its judgment should be reversed and the case remitted to it for that purpose.

*Brown* v. *Cleveland Trust Co.*, 195 App. Div. 465, reversed.

(Argued April 24, 1922; decided May 31, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 18, 1921, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*Frank A. Quail* and *George Gordon Battle* for appellant. The former action having been discontinued, the appellant is not concluded by the judgment entered therein. (*Deen* v. *Milne*, 113 N. Y. 309; *Cahill* v. *Wissner*, 183 App. Div. 663; *P. C. & St. L. Ry. Co.* v. *Keokuk & H. Bridge Co.*, 107 Fed. Rep. 781; 109 Fed. Rep. 279; *Smith* v. *McCluskey*, 45 Barb. 617; *City of Tampa* v. *Tampa Water Wks.*, 45 Fla. 600; 199 U. S. 241; *Bedford-Bowling Green Stone Co.* v. *Oman*, 134 Fed. Rep. 431.) In construing the trust agreement in evidence as a contract of absolute guaranty the court below committed reversible error. (*M. & E. R. R. Co.* v. *Sussex R. R. Co.*, 20 N. J. Eq. 542.)

*William C. Breed* and *Edward A. Craighill, Jr.*, for respondent. The decision of the Appellate Division in the previous action between these parties, from which no appeal was taken by defendant, was a conclusive adjudication that the contract sued upon imposed on defendant an absolute obligation to make the stipulated

payments to plaintiff in the event of Brown's failure to make them. (*Cummerford* v. *Paulus*, 66 Mich. 648.) By the plain language of the agreement of June 2, 1899, defendant assumed an absolute obligation to pay plaintiff $200 a month during her life, if Brown failed to make such payments. (*Reardon* v. *Werner*, 111 App. Div. 259; *Lord* v. *Lord*, 68 Hun, 537; *Dupre* v. *Rein*, 7 Abb. [N. C.] 256.) The common intent in making the agreement of June 2, 1899, as shown by the surrounding circumstances and apparent object of the parties, was to insure absolutely the payment of $200 a month to plaintiff during her natural life. (*Smith* v. *Kerr*, 108 N. Y. 31.) The practical interpretation put upon the contract by the parties was that the trust company had assumed an independent obligation, and that the contract did not constitute the trust company a mere trustee or stakeholder for Mrs. Brown. (*B. Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Nicoll* v. *Sands*, 131 N.Y. 19; *City of New York* v. *N.Y. C. R. R. Co.*, 193 N. Y. 548; *Carthage T. P. Mills* v. *Vil. of Carthage*, 200 N. Y. 1.)

McLAUGHLIN, J.   Prior to the 2d of June, 1899, this plaintiff had brought an action which was then pending in the Court of Common Pleas of Ohio to procure a divorce from her husband, John H. Brown. For the purpose of settling all questions of alimony, maintenance and support, and the release of plaintiff's inchoate right of dower, an agreement was entered into on the day named between John H. Brown of the first part, Sallie S. Brown of the second part, and the Cleveland Trust Company of the third part. By the terms of this agreement Mr. Brown agreed to pay to Mrs. Brown $2,400 a year in equal monthly installments of $200 on the first day of each and every month thereafter during her life, provided she remained unmarried, and in the event of her remarriage, then $100 a month instead of $200. In

26

consideration of such payment she agreed to release all her rights of dower, alimony or maintenance and " of all rights of every kind and character which have accrued or may accrue to the party of the second part by reason of their marital relations." At the time the agreement was entered into Mr. Brown had a residence and certain real estate in connection therewith in Cleveland, the value of which was estimated to be between $75,000 and $80,000, and independent of this he was believed to be a wealthy man. In order to secure his performance of the agreement, he conveyed this property to the Cleveland Trust Company in trust. By the agreement the trust company, as trustee, agreed if Mr. Brown failed or refused to pay Mrs. Brown at the time and in the manner therein provided, then it would, on demand of Mrs. Brown, advance the said monthly payments, and in addition would pay all taxes and costs of insurance and the expense of any repairs in order to preserve and protect the security; and for all such advances, with six per cent interest, the trust company should have a first lien on the premises; and after thirty days' written notice to Mr. Brown from the trust company, that it had made such advances, it should have the right to sell the property, either at public or private sale, according to the best judgment of its officers, in order to protect itself " and at the same time protect the party of the second part by providing a fund, the income from which will be sufficient to provide for· the payment of the monthly sums then due and payable to said party of the second part and to become due and payable during the remainder of her natural life."

The agreement further provided that after the trust company had reimbursed itself for such advances, the remaining proceeds of the sale should be held by it for the purpose of securing the prompt and punctual payment of the monthly installments thereafter becoming due to Mrs. Brown and that it should use the principal if the interest or income proved inadequate.

1922.]          Opinion, per MCLAUGHLIN, J.          [233 N. Y. 399]

From the date of the agreement until December, 1903, Mr. Brown paid regularly the required allowance and the same was transmitted to Mrs. Brown. In December of that year he requested the trust company to advance the monthly allowance to Mrs. Brown, and this it did until July, 1908. In March, 1909, Mrs. Brown brought an action in the Supreme Court of the state of New York against the trust company to recover installments then due. A demurrer was interposed to the complaint, which was overruled, and on appeal to the Appellate Division the judgment was affirmed, " with leave to defendant to withdraw demurrer and answer on payment of costs." (*Brown* v. *Cleveland Trust Co.*, 139 App. Div. 932.) Following the decision of the Appellate Division the action was " discontinued by consent of the parties without costs to either party." Thereafter the trust company paid the amount for which the action had been brought and continued to make the advances of installments as they fell due until September, 1915, after which date it ceased to make the advances and no further advances have been made by it.

Plaintiff thereupon brought one action to recover installments which remained unpaid for the months of October and November, 1915, and another to recover installments remaining unpaid from the date of the first to the date of the second. An order was thereafter entered consolidating the two actions. The consolidated action was tried at Special Term — a jury having been waived — and at the close of the evidence a stipulation was entered into by counsel for the respective parties, that the court was not bound by the pleadings as served, " but may award the plaintiff any relief, either at law or in equity, to which she may be entitled under the agreement of June 2, 1899." The trial court reached the conclusion that the trust company was not personally obligated under the agreement; that its liability was that of a trustee, and as such it was liable only to the extent of

the property which it had received from Mr. Brown; that the trust company file an account of such property and its management in connection therewith. The account was filed, from which the court determined that it held, or with proper management should hold, property of the value of $25,832.57, from which should be deducted $9,943.27, the amount then due the plaintiff with interest; and that the trust company, after making such payment, shall from the income and principal of the balance of said trust fund, pay to the plaintiff at the time and in the manner provided in the agreement, the installments as the same shall fall due, until such fund is exhausted. Both parties appealed to the Appellate Division, the plaintiff because the trust company was not adjudged personally liable and also because its account had not been surcharged with certain items; and the defendant because its account had been surcharged with certain items. The Appellate Division reached the conclusion, without passing upon the facts, that the trust company was personally liable under the agreement for the amount stated in the complaint and its decision in the prior action was *res adjudicata* on that subject. It accordingly reversed all of the conclusions of law made by the trial court and in lieu thereof made certain conclusions of its own, upon which it directed that judgment be entered in plaintiff's favor against the defendant for the amount demanded in the complaints. From this judgment defendant appeals to this court.

I am of the opinion the judgment appealed from should be reversed. *First.* The agreement did not impose a personal obligation upon the trust company to pay in case the plaintiff's husband failed to pay as therein provided. There is not a word in the agreement, as I read it, which indicates any of the parties so intended. If it had been supposed that the trust company was acting as a guarantor instead of as trustee, apt words would have been used to show that fact. The recitals contain nothing to indicate that by joining in the agree-

ment the trust company was to assume the position of a guarantor. Many of the provisions, and especially the acceptance clause, are inconsistent with such intention. The acceptance clause is: " The party of the third part hereby accepts and agrees to perform the trusts hereinbefore provided." In the event of a sale the trust company was authorized to invest the proceeds derived therefrom and pay the income from the investment, and the principal, if necessary, in making the monthly payments. There is nothing in the agreement which is expressed, or can be implied, that, in case of a sale, the trust company was to make any advances out of its own funds; on the contrary, it was simply to pay as trustee.

Construing the entire agreement, it seems to me but one conclusion can be drawn therefrom, viz., that the trust company was to hold the property put in its possession as trustee, for the purpose of securing payments agreed to be made to Mrs. Brown from such property in case Mr. Brown neglected or failed to pay; and when such property had become exhausted, then the liability of the trust company ceased. As a trustee it was bound, in the management of all the matters of the trust, to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs. (*Costello* v. *Costello*, 209 N. Y. 252, 261.) If it did not so act, then it became liable only to the extent of the depletion of the trust fund. Whether it did so act, and if not, the extent of its liability, are matters not before us and which we do not consider, since they were not passed upon by the Appellate Division.

*Second.* The Appellate Division also erred in holding that the judgment in the prior action was *res adjudicata* as to the construction of the agreement in this action. That was an interlocutory judgment, which is never *res adjudicata.* It is only a final judgment upon the merits which prevents further contest upon the same

[233 N. Y. 399]        Opinion, per McLaughlin, J.        [May,

issue, between the same parties, that becomes conclusive between them and their privies, which is *res adjudicata.* Until a final judgment has been entered, the proceedings are subject to change and modification and avail nothing as a bar.    (*Webb* v. *Buckelew*, 82 N. Y. 555, 560; *Rudd* v. *Cornell*, 171 N. Y. 114, 129.)

Not only this, but the former action, according to a finding which was not reversed by the Appellate Division, was " discontinued by consent of the parties." The action having been discontinued, there was no adjudication in that action which bound any one. " By the discontinuance of an action the further proceedings in the action are arrested not only, but what has been done therein is also annulled, so that the action is as if it had never been. If a suit be discontinued at any stage, or the judgment rendered therein be set aside, or vacated, or reversed, then the adjudication therein concludes no one and it is not an estopped or bar in any sense." (*Loeb* v. *Willis*, 100 N. Y. 231, 235.)

The Appellate Division, as before indicated, did not pass upon the facts. It has yet to determine whether the defendant was negligent, and if so whether the damages assessed against it because of its negligence are excessive or inadequate. Its judgment should, therefore, be reversed and the case remitted to it for that purpose, with costs to abide the event.

Hiscock, Ch. J., Hogan and Cardozo, JJ., concur; Pound, Crane and Andrews, JJ., dissent.

Judgment reversed, etc.