**Herbert and Esther AURITT**

v.

**R. WHEATCROFT et al.**

**Civ. A. No. 73–1454.**

United States District Court,
E. D. Pennsylvania.

Jan. 8, 1974.

Morton Krase, Philadelphia, Pa., for plaintiffs.

Alfred O. Breinig, Jr., Jenkintown, Pa., for defendants.

## OPINION

HANNUM, District Judge.

Presently before this Court is the defendants' motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. 28 U. S.C. To deal with the legal issues raised herein a detailed chronology of events underlying this controversy is required.

### CHRONOLOGY OF EVENTS

On September 9, 1968, the Tax Claim Bureau of Montgomery County sold the premises located at 75 McFadden Drive, Huntingdon Valley, Abington Township, Montgomery County, Pennsylvania, to

one R. Wheatcroft.[1] Prior thereto the owners of record were Herbert and Esther Auritt, tenants by the entireties.[2] Although the sale was held to satisfy $1,553.82 in delinquent taxes for the years 1966 and 1967, $2,326.05 plus $13.00 costs was obtained.[3]

On December 31, 1968 the Auritts filed in Montgomery County Court of Common Pleas a petition to have the sale invalidated. The petition was answered and evidence was received by deposition. The petitioners alleged that the sale should be set aside because (1) the notice provisions of the Real Estate Tax Sale Law, the Act of July 7, 1947, P.L. 1368, 72 P.S. § 5860.602, were not observed by the local Tax Claim Bureau and (2) the purchase price extracted at the sale was grossly inadequate.[4] The Court held (in an opinion by Judge Ditter, now United States District Court Judge for the Eastern District of Pennsylvania) that the sale was proper and must be confirmed.[5] Strict compliance with the Real Estate Tax Sale Law was shown and inadequacy of the price as it related to the value of the property was not shown; nor was the latter found to be relevant to defeat an otherwise proper tax sale.[6]

On June 3, 1971 the Commonwealth Court, in an opinion by Judge Kramer, affirmed the lower court's decision.[7] The Commonwealth Court found these facts:[8]

"1. Notice by certified mail that the 1966 property taxes on the Auritt property were delinquent was received in June of 1967. The receipt was signed by Fannie Goldman, mother of Mrs. Auritt (appellant).

2. Notice by certified mail that the 1967 property taxes on the Auritt property were delinquent was received on June 14, 1968. The receipt was signed by Mrs. Esther Auritt (wife-appellant).

3. A copy of the Application for Registration or Certification stamped by the Post Office Department was introduced. This sheet listed all letters sent via registered mail on July 9, 1968, by the Tax Claim Bureau of Montgomery County. Among the entries were two pertinent to this case. One showed a letter sent to Mr. Auritt at his business address, and one showed a letter sent to Mr. and Mrs. Auritt at their home address. An employee of the Bureau testified that all of the addresses on the sheet introduced were recipients of upset-sale notices.

4. The upset-sale notices mentioned in "3" above were sent by registered mail, "return reply requested". As to whether the instruction "deliver to addressee only" was included on the companion receipt card is a matter of contention among the parties. It is known by clear evidence that the letter sent to Mr. Auritt at his business address bore the instruction "deliver to addressee only". This is known because the actual companion card sent with the letter was returned to the Bureau and bore the "deliver to addressee only" instruction. This letter addressed to Mr. Auritt at his business was accepted and signed for by the employee of a neighbor merchant. By prearrangement, from time to time, Mr. Auritt's mail was accepted for him by other merchants in his absence.

The letter addressed to Mr. and Mrs. Auritt at their home address presents us with the following problem: Neither the original letter nor the companion return receipt card was ever returned to the Bureau by the

---

1. Tax Claim Bureau Upset Sale, 93 Montgomery County Law Reporter 170 (1970).

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. Tax Claim Bureau v. Wheatcroft, 2 Pa. Cmwlth. 408, 278 A.2d 172 (1971).

8. *Id.*, at 410, 411, 278 A.2d at 174.

Post Office. The Post Office did, however, return a card of its own which bore the communication "returned to sender unclaimed July 23, 1968, Montgomery County Tax Claim Bureau, Norristown, Pa." Based upon the absence of the original return receipt card and the failure of the Post Office card to indicate that the letter had indeed been sent "deliver to addressee only", the appellants claim that a failure to comply with the statute is manifest and therefore the tax sale must be set aside.

5. The required posting had been satisfied as shown by the poster's signature on the affidavit and return of posting. The posting occurred on July 30, 1968."

In addition, the Commonwealth Court found that there was compliance with the notice provisions of the Real Estate Tax Sale Law, and concluded:

"We are of the opinion that the notice sent to the Auritt home constitutes valid notice affording proper protection of their due process rights.[9]

On August 30, 1971, the Auritt's petition for allocatur was denied by the Supreme Court of Pennsylvania.[10] On October 14, 1971, the Auritt's petition for Reconsideration of Allocatur was likewise denied.[11]

Thereafter, in November of 1971 a deed to the premises in dispute, reflecting title transfer from the Tax Claim Bureau of Montgomery County to R. Wheatcroft, was recorded.

The Auritts having refused to quit the premises, on January 19, 1972 a complaint in ejectment was filed in the Court of Common Pleas of Montgomery County, Pennsylvania by Wheatcroft. A judgment in ejectment for possession of the premises was entered in favor of Wheatcroft against the Auritts on August 17, 1972 by Judge Stefan. However, a Stay of Execution of this judgment was entered by Judge Cirillo of the

Montgomery County Common Pleas Court on February 27, 1973. Thereafter, on June 26, 1973 the Court en banc at Montgomery County vacated the Stay of Execution and Ordered the Petition for Reconsideration of August 17, 1972, dismissed. This dismissal was appealed to the Superior Court of Pennsylvania where it was dismissed October 5, 1973.

On June 28, 1973, the Auritts filed in this Court a complaint and petition for a temporary restraining order, wherein they seek to enjoin R. Wheatcroft, Maurice M. Green, Alfred O. Breinig, Jr. and the Sheriff of Montgomery County from proceeding with the Writ of Execution to evict the plaintiffs from the premises in question.

This Court refused to grant the temporary restraining order and July 17, 1973 was set for the hearing on the preliminary injunction. Prior thereto the defendants filed their motion for judgment on the pleadings and for summary judgment. The motion was argued and oral assurance was made to this Court by counsel for the defendants that the ejectment proceedings would be stayed pending resolution of this motion by the Court. Thereafter, proposed findings of fact and conclusions of law were requested from the parties. In addition, certain factual issues were stipulated to by counsel.

## THE ISSUES

The plaintiffs raise two issues in their complaint: (1) that under no circumstances did the plaintiffs receive adequate notice of the tax sale and, (2) assuming *arguendo,* notice was adequate, the plaintiffs contend that the Real Estate Tax Sale Law is unconstitutional and deprives one of due process of law and is violative of the Fourteenth Amendment to the United States Constitution.[12]

The defendants contend that the Real Estate Tax Sale Law does not violate

---

9. *Id.,* at 413, 278 A.2d at 175.

10. No. 195 Allocatur Docket.

11. *Id.*

12. *See,* plaintiffs' Complaint at pages 5, 6.

due process and that the several decisions of the courts of the Commonwealth of Pennsylvania are res judicata of these issues.[13]

## RESOLUTION

The defendants in their Answer pleaded res judicata as an affirmative defense. On this basis they move for summary judgment.

"With respect to a specific affirmative defense such as res judicata, the rule seems to be that if the facts are admitted or are not controverted or are conclusively established so that nothing further can be developed by a trial of the issue, the matter may be disposed of upon a motion to dismiss whether the decision of the District Court be considered as having been arrived at under the provisions of Rule 12(b) or Rule 56(c)." Larter & Sons, Inc. v. Dinkler Hotels Co., 199 F.2d 854, 855 (5th Cir. 1952).

28 U.S.C. § 1738 "makes the concept of the full faith and credit clause of Section 1 of Article IV of the Constitution applicable in a federal court when the first suit has been in a state court." Williams v. Murdock, 330 F.2d 745, 751 (3d Cir. 1964).

The defendants' position is that the present issues having already been litigated, res judicata bars relitigation of them before this Court.

The doctrine of res judicata provides that if a previous judgment by a court of competent jurisdiction is valid, and on the merits, it is an absolute bar in another case on the same cause of action between the same parties or their privies not only in respect of every ground of recovery, defense, or matter of fact and law which were presented, but also as to every ground of recovery, defense, or matter of fact or law which could have been presented. *See, e. g.*, Com-

missioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932); Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L. Ed. 195 (1876); Blum v. William Goldman Theatres, 174 F.2d 914, 915 (3d Cir. 1949); Jamerson v. Lennox, 356 F. Supp. 1164, 1166 (W.D.Pa.1973); R.S. Judgments §§ 47, 48.

■ Application of the doctrine depends on the conjunctive presence of the following factors: (1) the parties must be the same; (2) the cause of action must be the same; (3) the matters raised in this litigation either were raised or could have been raised in the other litigation.

The first factor is clearly present. The parties before the Court, to the extent that it matters, are the same parties that challenged the tax sale in the Court of Common Pleas of Montgomery County,[14] the Commonwealth Court of Pennsylvania,[15] the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.[16]

■ The second factor, that is, whether the cause of action in this litigation is the same as the cause of action in the prior litigation, is also present here. The point is significant because if the cause of actions were different, then collateral estoppel would not preclude the parties from raising and litigating matters that were not adjudged in the other suit even though these could have been litigated.[17] The term cause of action is an elusive concept which fact caused even the draftsmen of the Federal Rules to avoid it. Many tests have been developed to determine the similarity of causes of action; however, "in the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions."[18] The wrong sought to be re-

---

13. *See,* defendants' Answer at page 1.

14. *Supra.,* note 1.

15. *Supra.,* note 4.

16. *Supra.,* notes 7, 8.

17. *See,* 1B Moore's Federal Practice ¶ 0.-410 [1] (1965).

18. Woodbury v. Porter, 158 F.2d 194, 195 (8th Cir. 1946).

dressed here (that is, the propriety of the sale) is the same wrong complained of in the plaintiffs' attempt to invalidate the tax sale in the first lawsuit in 1970. In fact, "the acts complained of and the demand for recovery are the same. . . . The same witnesses and documents will be necessary in the trial in both cases." [19] Nor is any material fact alleged in this action that was not alleged in the prior action.[20] The Court is convinced for these reasons that the cause of action in the case at bar is the same as the cause of action in the prior Pennsylvania State Court cases.

The last factor is whether the matters raised here were raised or could have been raised in the prior cases. Plaintiffs' complaint, as noted above, urges two points: (1) that statutory compliance was not fulfilled; and (2) that the statute is unconstitutional. The former was raised in the prior cases, the latter was not.[21]

If res judicata stands for anything, it must bar the plaintiffs' challenge to the adequacy of notice. This precise matter was litigated in four state courts. This Court will not sit to review their decision. Nor should we. The validity of this proposition is supported by a recent decision in this Circuit, Connelly Foundation v. School District of Haverford Township, 326 F.Supp. 241 (E.D.Pa. 1971), affirmed 461 F.2d 495 (1972). There the plaintiff sought to enjoin in Federal Court the condemnation of his premises by the defendant school district. Initially, and in accordance with the procedures prescribed by the Pennsylvania Eminent Domain Code, the plaintiff filed preliminary objections to the declaration of taking. The issues raised therein were adjudicated adversely to the plaintiff by the Court of Com-

mon Pleas of Delaware County. On appeal to the Supreme Court of Pennsylvania the lower court was affirmed. The plaintiff filed an appeal to the Supreme Court of the United States which was dismissed. The plaintiff then brought the action for declaratory and injunctive relief in the District Court. In granting the defendant's motion to dismiss on the ground that res judicata barred the action, the Court said at pages 242, 243 of 326 F.Supp.:

> "Reference to the opinion of the Supreme Court of Pennsylvania discloses . . . that the issues here raised by the plaintiff by way of its complaint were previously considered in depth, carefully litigated and properly adjudicated."

The second matter, that is, whether the constitutional issue could have been raised in the prior case, requires more analysis. There is, of course, no doubt but that it could have been raised; first in the action to invalidate the tax sale, and second in the plaintiffs' defense to the defendants' later ejectment action. We are mindful that the plaintiffs raise a serious constitutional issue. We are also mindful that public policy has been used to avoid a harsh application of the doctrine of res judicata.[22] Nevertheless, we are convinced that the plaintiffs must fail. In Mertes v. Mertes, 350 F. Supp. 472 (D.Delaware 1972) affirmed 411 U.S. 961, 93 S.Ct. 2141, 36 L.Ed. 681 (1973), the plaintiff sought to enjoin in Federal Court the enforcement of a Delaware divorce statute. The facts leading up to the action are as follows:

> "On October 30, 1971, the defendant Victorine S. Mertes ("Victorine"), was granted a Final Decree of Divorce from the plaintiff, Thomas S. Mertes ("Thomas"), by the Delaware Superior Court in and for New Castle

---

19. Williamson v. Columbia Gas and Electric, 186 F.2d 464, 470 (3d Cir. 1950) cert. denied 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355.

20. *Id.*, *See, also*, Norwood v. McDonald, 142 Ohio St. 299, 52 N.E.2d 67 (1943).

21. *See*, defendants' Brief in Support of Motion for Summary Judgment at pages 1 and 2.

22. *See*, 1B Moore's Federal Practice, ¶ 0.-405 [11] (1965).

County on the grounds of Thomas' willful desertion.. On February 24, 1972, following a hearing on the allowance or division of property upon divorce, the Superior Court directed Thomas to transfer portions of his real and personal property to Victorine pursuant to 13 Del.C. § 1531(a)(2). Thomas, who was represented by counsel of his own choosing, participated fully in both of these state court proceedings.

Upon appeal by Thomas of this judgment to the Delaware Supreme Court, Thomas for the first time raised the claim that 13 Del.C. § 1531(a) violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. On June 12, 1972 the Delaware Supreme Court affirmed the lower court decision and refused to consider the constitutional question because that issue had not been raised in the court below and was not a question of such public importance as to be entertained for the first time on appeal. When Thomas still refused to comply with the allowance and division of property award after affirmance by the Delaware Supreme Court, the Superior Court on August 1, 1972 entered an order to enforce its judgment and pursuant to 13 Del.C. § 1531(b) appointed a commissioner to convey Thomas' undivided one-half interest in certain property to Victorine. Basing his complaint upon 42 U.S.C. § 1983, Thomas then instituted the present action in this Court on August 1, 1972 seeking (a) an order declaring § 1531 unconstitutional, (b) an injunction against the operation of the property division enforcement order and (c) a $40,000 judgment for damages against Victorine. The complaint named as defendants Victorine, Robert O'Hara, the presiding Superior Court Judge in the divorce and property division proceedings and Paul E. Neill, the Prothonotary of New Castle County, the commissioner appointed to convey Thomas' interest in the jointly held real estate."

In dismissing the complaint the Court stated at page 474:

"The fact that the constitutional claim raised here was not considered by the Delaware Supreme Court because of Thomas' procedural default in failing to raise the issue at the lower state court does not make the doctrine (res judicata) inapplicable."

Although in the case at bar the Pennsylvania Supreme Court did not affirm the decision of the lower court (Allocatur was denied), the plaintiffs herein did suffer an adjudication on the merits before the Commonwealth Court of Pennsylvania.

Public policy has been used to overcome the doctrine of res judicata where manifest injustice might disadvantage one of the parties. Here, however, the plaintiffs have had their day in court—and much more. It is five years since this litigation began. Although the doctrine of res judicata may not be well liked, it is universally respected. Riordan v. Ferguson, 147 F.2d 983, 988 (2nd Cir. 1945). We do not venture an opinion as to whether the judgment relied on was a right or wrong decision. Nor do we express an opinion on the constitutionality of the state statute in question. All we hold is that the plaintiffs having raised, or having had the opportunity to raise these issues in the prior litigation, they cannot by reason of design or dereliction raise them again in this Court.